# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANCHART SECURITIES INTERNATIONAL, INC., et al.,<br><br>      Plaintiff,<br><br>   vs.<br><br>SERGIO GALVADON, et al.,<br><br>      Defendant. | CASE NO. 12cv2522-LAB (MDD)<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER** |

On October 22, 2012, Plaintiffs Stanchart Securities International, Inc. (Stanchart), Standard Chartered International (USA) Ltd. (SCI USA), and Standard Chartered International (Americas) Ltd. (SCI Americas) filed an emergency application for a temporary restraining order (Docket no. 4) as well as a noticed motion for a preliminary injunction. Plaintiffs' immediate objective is to avoid an evidentiary merits hearing before a FINRA arbitration panel on October 25, 2012. This order addresses only the emergency motion for a TRO.

**Standards**

TROs are for emergencies only. The high hurdle plaintiffs must clear to obtain the "reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438

(1974). The TRO standard is the same as the preliminary injunction standard, with the additional requirement that the applicant show immediate relief is necessary. *See, e.g., Hunt v. Nat'l Broad. Co., Inc.*, 872 F.2d 289, 292 (9th Cir. 1989). *See also* Fed. R. Civ. P. 65(b)(1)(A) (movant must "show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition").

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 129 S.Ct. 365, 374 (2008). In the alternative, the "sliding scale" approach can be used. Under this approach, a party seeking a preliminary injunction must show a combination of serious questions going to the merits, and must also show that the balance of hardships tips sharply in the movant's favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (holding that the sliding scale test remained valid).  A weaker showing on either of the two points can be outweighed by a stronger showing on the other. *Id.*

**Discussion**

The party roles are reversed in this TRO application: Defendants are the claimants, and they are seeking an arbitration award against Plaintiffs. Plaintiffs therefore filed this action and are seeking to avoid the arbitration.

Plaintiffs' argument is essentially that only Stanchart is a FINRA member and that neither SCI (USA) or SCI (Americas) are. It also argues that Defendants are not really customers of Stanchart, and that their claims arose before Stanchart was a FINRA member. Under Rule 12200 of the FINRA code, parties must arbitrate disputes if arbitration is either required by written agreement or requested by a customer, if the dispute is between a customer and a member (or a person associated with a member), and if the dispute arises in connection with the member's or associated person's business. The FINRA code does not define "customer," except to say that it is not a broker or dealer. FINRA Rule 12100(i).

/ / /

FINRA arbitration proceedings have been going on since January, 2011, when Sergio and Angelica Gavaldon submitted their amended statement of claim. The TRO Motion does not outline fully the history of the arbitration. Because the statement of claim dated January 5, 2011 was an amended statement rather than the original, it is possible arbitration proceedings have been ongoing for an even longer time. But because Plaintiffs object to the arbitration of the Gavaldons' claims, it is clear Plaintiffs have known for at least a year and ten months about some of the claims they now seek to avoid arbitrating.

On May 12, 2011, Plaintiffs filed their amended answer to the statement of claims (Mem. of P. & A. in Supp. of Emergency Mot. for TRO ("TRO Motion"), at 11:5–6), and have also filed two motions to dismiss. (*Id*. at 11:6–7, 12:4.)

Plaintiffs point out that being compelled to arbitrate non-arbitrable claims can result in irreparable harm. *See Textile Unlimited, Inc. v. ABMH & Co.*, 240 F.3d 781, 786 (9 th Cir. 2001) (affirming issuance of preliminary injunction based on finding that plaintiff would suffer irreparable harm if arbitration were not stayed); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (holding that "being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable" can constitute irreparable harm). Some courts have held that this would constitute irreparable harm *per se*, though it does not appear the Ninth Circuit has ever done so and Plaintiffs do not cite any binding precedent so holding.

These precedents, while relevant and instructive, do not fully address the situation in this case, because proceedings have been ongoing since at least early January, 2011. Plaintiffs argue that because the answer and motions to dismiss reserved the right to contest arbitrability, submitting them did not waive the issue of arbitrability. (TRO Motion, 12:9–23.) This may be true, but the fact remains Plaintiffs continued to participate in the arbitration process and only filed their TRO Motion three days before the evidentiary merits hearing they now ask the Court to stay. Under these circumstances, the expenditure of resources associated with an evidentiary hearing is minimal, particularly when compared with arbitration proceedings Plaintiffs have already participated in.

The Ninth Circuit has held that delays in seeking relief should be considered when determining whether preliminary injunctive relief should be granted. *See Miller* ex rel. *NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.") (internal quotation marks and citation omitted); *Lydo Enterprises v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.") Though there may be a good and reasonable explanation for Plaintiffs' delay in seeking relief, the TRO Motion doesn't give it.

The Court therefore holds that the "irreparable harm" requirement is not met. The Court need not analyze all the other *Winter* factors because it is clear Plaintiffs cannot satisfy this test.

Turning to the "sliding scale" test, the "balance of hardships" element is not of much help to Plaintiffs. For the reasons just discussed, they have not shown any great hardship will result merely by their being required to participate in an evidentiary merits hearing. Even if it turns out later that some or all of the issues are non-arbitrable, it is unclear what the panel's decision will be. The panel might, for example, find the issues non-arbitrable on its own. It might also dismiss Defendants' claims against Plaintiffs. In either circumstance, Plaintiffs will have lost nothing. It may also be that the panel issues a decision on the merits adverse to Plaintiffs, and that Plaintiffs would therefore need to seek to have it declared void. But even if that happens, Plaintiffs' hardship would be minor.

Turning to the merits, while Plaintiffs argue the case is clear-cut, it is not as clear as they argue. The TRO Motion denies the existence of a binding arbitration agreement, it is clear the various parties are connected through either business relationships or arbitration agreements among some of the interested parties. (TRO Motion, 2:13–3:5 (summarizing relationships and agreements).) In short, it is apparent to the Court that the issues are a good deal more complex and less obvious than Plaintiffs maintain.  What Plaintiffs are asking for here is not a determination of likely success on the merits, but a full adjudication on the merits. This is not authorized nor is it feasible given the constraints inherent in TRO

applications—particularly emergency applications. The Court therefore concludes that Plaintiffs have not shown enough of a likelihood of success on the merits to overcome a weak showing of irreparable harm. Using the "sliding scale" approach, therefore, the Court finds that emergency relief is not warranted.

The fairly late application for relief has also had the effect of truncating the normal briefing schedule. While Plaintiffs apprised the Court and Defendants they would be filing the TRO Motion, they did so only one week beforehand, and in any case the TRO Motion itself was only available for review on October 22. It bears mentioning that the briefing is extremely lengthy: the memo of points and authorities is 31 pages long, and the 35 attached exhibits amount to hundreds of pages. Defendants have been able to file an opposition, but only at the last minute, under a deadline imposed on them by Plaintiffs' filing date. Even though Defendants may be familiar with the general nature of the disputes here, it would be unreasonable to expect them to provide full, considered briefing on all issues on two days' notice. Under the circumstances presented here, the Court holds that this doesn't amount to the "reasonable notice" that is required before the Court will grant relief. *See Granny Goose Foods*, 415 U.S. at 438.

**Conclusion and Order**

For these reasons, the emergency application for a temporary restraining order is **DENIED**. Because the motion for preliminary injunction seeks an injunction of all arbitration, not just the October 25 hearing, it does not appear to be moot but remains pending.

**IT IS SO ORDERED**.

DATED: October 24, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge